WOESSNER *et al.* v. SMITH *et al.*[*]

(Division A. Dec. 1, 1924. Suggestion of Error Overruled Dec. 22, 1924.)

[101 So. 849.   No. 24899.]

1. WILLS.  *Construed according to testator's intention ascertained from whole will.*

   Will is to be construed according to testator's intention, ascertained from whole will.

2. WILLS.  *Legacies held not charge on real estate given testator's wife and children.*

   Where testator left personal property and real estate other than his plantation sufficient for payment of legacies, but other real estate was lost by foreclosure, and the executrix dissipated the personal estate, the plantation, given wife and children with directions for the support and education of the children from the proceeds thereof, *held* not charged with payment of legacies, notwithstanding provision that "said legacies are hereby made a charge on my estate."

[*]Headnotes 1.   Wills, 40 Cyc, p. 1414;   2.   Wills, 40 Cyc, p. 2017.

APPEAL from chancery court of Leflore county.
HON. C. L. LOMAX, Chancellor.

Suit between William Woessner and others and Mrs. Hattie Lee Smith and others.  From the decree rendered, the former appeal.  Affirmed.

*Pollard & Hamner*, for appellants.

We understand the rule to be that the intent of a testator is to be gathered from a reading of the whole will and that every part of a will is to be enforced where it is possible to do so.  We, also, understand that plain and unambiguous clauses of a will are to be respected by the courts and enforced as written.  The court is not called upon to make a will but to construe it and then enforce it without regard to whether it might seem just or unjust

and without regard to the effect of conditions which may have arisen after the death of the testator.

Obergfell appointed his wife executrix without bond and provided no security, and an insufficient amount of property, for the payment of the legacies to his own nephews and nieces, and, unless the court gives the plain and ordinary meaning to the clause "It is my further will that said legacies are hereby made a charge on my estate," then the nephews and nieces of the testator will go without taking the gifts which their Uncle John intended they should have when he wrote his will. The language of the clause of the will providing security for the legacies is perfectly plain.

We contend that the plain and ordinary meaning of the words used in the will shows that the legacies were a charge on the estate. The testator was dealing directly with the legacies when he used the language: "It is my further will that said legacies are hereby made a charge on my estate." Suppose the testator had wanted to charge these legacies in favor of his nephews and nieces against all of his property, what plainer or stronger language could he have used? The testator had just finished itemizing the legacies he wanted paid and concluded the article of his will by providing in apt language that they "are hereby made a charge on my estate." The word "estate" when used in reference to the property of a decedent means all his property, and it was used here in that sense. *Andrews* v. *Broomfield*, 32 Miss. 107. It is well settled in Mississippi that legacies may be charged against lands specifically devised and that the charge may be made as well by implication as by specific direction in a will. *Stuart* v. *Robinson*, 80 Miss. 290; *Estate Maria Barbara Lutz, Deceased*, 50 L. R. A. 847.

*Crossett* v. *Clements*, 7 So. 207, holds that a will is to be enforced according to its terms, if legal, regardless of any hardship that may have arisen because of changed

conditions subsequent to the execution of the will. *Elliott*
v. *Topp,* 63 Miss. 142. ''In. seeking for the intention,
words are to be taken in their ordinary and grammatical
sense, unless a clear intention to use them in another can
be collected. When there is no ambiguity in the words,
there is no room for interpretation. *Vannerson* v. *Cul-
bertson,* 10 S. & M. 150.'' *Harvey* v. *Johnson,* 111 Miss.
566; *Currie* v. *Murphy,* 35 Miss. 473; *Wallace* v. *Wallace,*
114 Miss. 591.

*Gardner, Odom & Gardner,* for appellee.

The word ''legacy'' ordinarily means a gift of personal
property, and does not include real estate, unless some-
thing in the will shows that such was the intention of the
testator. 1 Underhill on Wills, sec. 319. The rule that
the testator's intention is only to be ascertained from
the language of the will as he leaves it, must be taken
with this qualification, that the courts are, within certain
limits, at liberty to mould its language into such shape
as will, upon the whole, best show its intention. The
power of reforming the language of the will has been
liberally exerted, and the present tendency is to extend
its operation. Whether this tendency is to be encouraged
is for the courts to determine. 1 Underhill on Wills, sec.
356.

The rule that of two apparently repugnant clauses the
former ought to be rejected as having been revoked by
the latter is regarded and applied with caution. In order
that it shall apply at all, it must clearly appear that the
two clauses are in fact, as well as apparently, repugnant
and irreconcilable. The rule, so far as it involves reject-
ing any part of the will, is not to be invoked lightly or
without any good reason. . . . Every possible effort
should be made by the court to reconcile the clauses seem-
ingly repugnant, and to give effect to the whole will; for
the presumption is that the testator meant something by

every sentence and word in his will, and no court is justi-
fied in rejecting any portion of it until it is positively as-
sured that the portion which it rejects cannot be recon-
ciled with the general intention of the testator as ex-
pressed in some other portion of the will.  1 Underhill
on Wills, sec. 359; 50 Miss. 15; 94 Miss. 293.

It is a very well established rule of construction that
words and clauses, and even whole paragraphs, otherwise
insensible, may be transposed in construing a will, if by
so doing the intention of the testator is to be ascertained
and will carried out.  It has often been repeated in the
course of this work that the intention of the testator is
to be ascertained from the whole will; and, such being a
cardinal rule of construction, the local position in the will
of any particular phrase or clause is not very material.
1 Underhill on Wills, sec. 362, pp. 495, 496, 497; R. C. L.
28, p. 225; 27 A. S. R. 487; Ann. Cas. 1915C, p. 336; 36
L. R. A. (N. S.) 618; 134 A. S. R. 1088; 138 A. S. R.
659; 40 Cyc. pp. 1383, 1386, 1387, 1392, 1393, 1399, 1400.
The object of construing a will is to ascertain the inten-
tion of testator, to be gathered from the whole will con-
strued in the light of the surrounding circumstances.—
(1912) *Henry* v. *Henderson,* 103 Miss. 48, 60 So. 33;
(1914) *Chrisman* v. *Bryant,* 108 Miss. 311, 80 So. 779; 5
Miss. Dig. 804; *Brickell* v. *Lightcap,* 115 Miss. 417, 76
So. 489; *Harvey* v. *Johnson,* 111 Miss. 566, 71 So. 824;
*Schlater* v. *Lee,* 117 Miss. 701, 78 So. 700.


*W. M. Whittington,* for appellees.

We have no fault to find with the definition of the
word "estate."  It is clear from the will in this case
what the testator meant when he used this word.  It is
held that a direction for the payment of legacies out of
the testator's "estate," or a provision that the execu-
tor should realize such part of his "estate" as he shall
deem proper for the payment of the legacies, will not

charge the legacies upon the land, even though the land is undisposed of by the will, much less upon land specifically devised. 40 Cyc. 2023; *Swift* v. *Edson,* 5 Conn. 531; *Brookhart* v. *Small,* 7 Watts & S. (Pa.) 229; 40 Cyc. 2023, note 90. The use of the word "estate" in Item 4, and the fact that the term "estate" usually means personal property, but is broad enough to include both real and personal property, makes its use in sec. 4 ambiguous. The surroundings of the testator, the dependency of his widow and children will be considered in determining whether lands are charged with pecuniary legacies, and in arriving at the intention of the testator, it becomes necessary to ascertain the condition of the estate at the time of the making of the will. *Stuart* v. *Robinson,* 80 Miss. 290.

The intent of the testator must control. It is the pole star in the construction of wills. The courts will look through the language and sometimes through the inaccuracies of lawyers in examining wills and construe the whole instrument to effectuate the intent of the testator. *Joiner* v. *Joiner,* 117 Miss. 507, 78 So. 369. The court will not favor an interpretation that revokes a devise once given. 1 Underhill on Wills, p. 342; *Joiner* v. *Joiner,* 117 Miss. 507, 78 So. 369.

As a general rule, the real estate is not chargeable with the payment of pecuniary legacies unless the intention of the testator to so charge it is clearly expressed. *Knitts* v. *Bailey,* 54 Miss. 235. Specific devises of land do not share with specific bequests of personalty in contribution towards the payment of the debts of the estate. *Gordon* v. *James,* 86 Miss. 752, 39 So. 18. A general purpose to charge both land and personalty with the payment of the debts and legacies will be inferred from the fact that the testator blends his real and personal estate. *Cady* v. *Cady,* 67 Miss. 425. A legacy is not a charge upon land unless expressly declared to be so or

unless an intent to make it a charge may be inferred from
the whole will. *Montgomery* v. *McElroy,* 38 Am. Dec.
771; *Newsom* v. *Thornton,* 82 Ala. 402; 60 A. R. 743; 40
Cyc. 2035; 40 Cyc. 2026; 40 Cyc. 2028; 40 Cyc. 2030; 40
Cyc. 2033.

The intent to charge legacies upon lands cannot be in-
ferred, and the burden of establishing the legacies to be
charged upon the real estate is upon the legatee. *Brill*
v. *Wright,* 112 N. Y. 129, 8 A. S. R. 717; *Hailey* v. *Mc-
Laurin,* 112 Miss. 705, 73 So. 727. Where a testator de-
vises both real and personal estate to a residuary lega-
tee, making no discrimination between the two classes
of property but massing the two together as a whole, the
realty like the personalty is charged with the payment
of prior pecuniary legacies. *Heatherington* v. *Lewen-
berg,* 61 Miss. 372; *Lusby* v. *Cobb,* 80 Miss. 715.

If the lands charged with the payment of legacies by
the will; if the residuary estate and the personal estate
charged by law with the payment of legacies has been
lost, it by no means follows that lands specifically devised
will be charged with the payment of legacies. The leg-
acies will lapse or abate in such event. 2 Alexander on
Wills, pp. 1035, 1157, 1160; 1 Schouler on Wills, secs.
469-470. Under the common law, land was not liable for
the payment of a legacy. The personal estate was the
primary fund for such payment and to the extent that
if it was deficient, the legacies failed. Rood on Wills,
sec. 748.

*Pollard & Hamner,* in reply for appellants.

This court has blazed the way in giving to wills that
same common sense construction that is given to other
written instruments, and has decided that where pe-
cuniary legacies are given at a time when the testator
knew that his debts and the legacies provided could not
be paid without resorting to the real estate specifically

devised then the testator intended to charge the land specifically devised. *Stuart ,v. Robinson,* 80 Miss. 290; 40 Cyc. 2022.

Argued orally by *R. V. Pollard,* for appellant, and *W. M. Whittington,* for appellee.

HOLDEN, J., delivered the opinion of the court.

The suit seeks a construction of the last will of J. Obergfell, deceased, and to charge all of his estate with the payment of certain legacies amounting to eighteen thousand dollars, bequeathed to the appellants by the will. The chancellor decreed that the testator did not intend to charge that part of his estate designated as his plantation, in Leflore county, which we will term the home place, with the legacies bequeathed the appellants; and from this decree the legatees appeal.

The testator left other real estate and personal property besides the home place referred to, and it was the contention of the appellee that the other property of the testator only was intended to be charged with the legacies; while the appellants contend that all of the property, both real and personal, of the testator was meant to be subject to the payment of the legacies. One of the clauses in the will, which is in item 4, provides as follows:

"It is my further will that said legacies are hereby made a charge on my estate."

Therefore the exact point involved is whether or not this clause in the will, taken together with the whole will, impresses a charge against all of the property of the deceased, including the home place, of five hundred acres, or whether the testator intended that the legacies should not be charged against the home place.

The intent of the testator, to be ascertained from the whole will, of course, is to govern in its construction, and therefore it will be necessary to set out the will in full, which we quote as follows:

"I, John Obergfell, a resident and citizen of the county of Leflore, state of Mississippi, being of sound and disposing mind and memory, and conscious of the uncertainty of human life, do make, publish and declare this to be my last will and testament, hereby revoking all other last wills and testaments that may have been made by me.

### Item 1.

"I give and devise to my wife, Hattie Lee Obergfell, and my foster children, Calvin Obergfell and Josephine Obergfell, share and share alike, my plantation located in sections three (3) and four (4), township nineteen (19), range two (2) west, Leflore county, Mississippi, near Itta Bena, Mississippi, together with all of the improvements thereon, upon the following terms and conditions, that is to say:

"My said wife, Hattie Lee Obergfell is to have the sole use, control and management of said plantation and to be entitled to all revenues, profits, issues and rents to be derived therefrom until Josephine Obergfell shall become twenty-one years of age. My said wife shall not have the right to alienate or encumber said plantation during the minority of either of said children. From the proceeds of said plantation, she is to provide for the support of said children during their minority, and for their proper education, the said Calvin Obergfell to be educated at Mississippi Agricultural & Mechanical College, and the said Josephine Obergfell, to be educated at the I. I. & C. Female College, at Columbus, Mississippi.

### Item 2.

"It is my further will, that my said wife, Hattie Lee Obergfell, shall as soon after my death as practicable, have the chancery clerk of Leflore county, Mississippi, appointed guardian of said children, and she is to furnish said chancery clerk from the proceeds of the crops to be grown on said plantation, the sum of three hundred dollars per year for said Calvin Obergfell until he becomes twelve years of age, and five hundred dollars per year

thereafter until he reaches twenty-one years of age; and the sum of three hundred dollars per year for said Josephine Obergfell until she becomes twelve years of age, and six hundred dollars per year thereafter until she reaches twenty-one years of age. Said sums to be paid said chancery clerk on or before the 15th day of December of each year, during the minority of said children; the sums so advanced by her to said chancery clerk to be used by said clerk in the support, maintenance and education of said children until their majority.

"Should either of said children die before they reach their majority, then the survivor is to inherit the interest of the deceased in said plantation, and should both of said children die before reaching their majority, then it is my further will that their two-thirds interest in said plantation shall be divided between my wife and the children of my brothers and sister, Louis Obergfell, Gottlieb Obergfell, and Sarah Obergfell, save and except Fred Woessner and William Woessner, who have already been provided for. Said two-thirds of said plantation to be divided as follows: My wife to receive two-thirds of said two-thirds, or four-ninths, and said children one-third, or two-ninths, of said plantation.

### Item 3.

"It is my further will that the cotton plantation located in Desha county, Arkansas, near Watson, Arkansas, and known as the 'Belco Plantation' comprising about one thousand two hundred eighty-seven acres, which is owned by me jointly with J. A. Nations, shall be operated and managed by my said wife, or rather my part of it, for three years after my death, and at the expiration of three years, if it is deemed advisable and to the best interests of my said estate, then it is my further will that my said wife, Hattie Lee Obergfell, shall have said plantation duly appraised by some competent man, or men, and then sell my interest in said plantation, at

public sale, upon the following terms, that is to say: One-fourth cash, and the remainder to be evidenced by three notes in equal installments, payable in one, two and three years, bearing six per cent. interest. It is my further will that in the event the legacies hereinafter provided for, shall not have been paid, then it is my further will that my said wife shall then pay from the proceeds of the sale of my one-half interest, all of said legacies unpaid. Should it be necessary to sell said property in order to pay said legacies, then it is my further will that any excess after paying said legacies, from the proceeds of the sale of said property, shall be divided between my said wife, Hattie Lee Obergfell, and Calvin and Josephine Obergfell, as follows: My wife to receive two-thirds and said children one-third of the excess over and above all legacies, but, should said property not be sold in order to pay said legacies, then my said wife, Hattie Lee Obergfell shall have the same.

### Item 4.

"I give and bequeath to my nephew, Fred Woessner, the sum of four thousand ($4,000) dollars.

"I give and bequeath to my nephew, William Woessner, the sum of four thousand ($4,000) dollars.

"I give and bequeath to the children of my brothers and sisters, Louis Obergfell, Gottlieb Obergfell, and Sarah Obergfell, wife of Grossman, save and except Fred Woessner and William Woessner, who have already been provided for, the sum of ten thousand ($10,000) dollars, to be divided equally among them.

"I give and bequeath to the rural consolidated school of Itta Bena, Mississippi, the sum of two thousand ($2,000) dollars.

"I give and bequeath to Margaret Switzer the sum of twenty-five hundred ($2,500) dollars.

"I give and bequeath to my wife, Hattie Lee Obergfell, in trust, for the use and benefit of Herbert Louise, and

Lucy Livers Carpenter, the sum of one thousand ($1,000) dollars, said sum to be expended in such manner as she may see fit, for their support and maintenance.

"I give and bequeath to Mose Smith, the sum of five hundred ($500) dollars.

"It is my further will that said legacies are hereby made a charge on my estate.

### Item 5.

"I give and bequeath to my friend, Albert Aron, all of my stock in the Itta Bena Compress, of Itta Bena, Mississippi.

### Item 6.

"I give and bequeath to my wife, Hattie Lee Obergfell, all of the residue of my estate, of whatever character, whether real, personal or mixed, wherever situated.

### Item 7.

"Reposing absolute confidence in my said wife, Hattie Lee Obergfell, I hereby appoint her executrix of this, my last will and testament, without bond.

"In witness whereof, I have signed, published and declared this instrument to be my last will and testament, on this the 25th day of July, A. D. 1919."

The testimony in the case shows that at the time of the death of the testator, which was but a few days after the execution of the will, in 1919, he had considerable personal property, amounting to probably twenty-seven thousand dollars and that he owned a half interest in a one thousand two hundred-acre place in Arkansas, upon which there was a balance due by him of about thirty-thousand dollars. This Arkansas place was never fully paid for, and consequently was lost to the estate by foreclosure against it.

At the time the testator made his will, general conditions were highly prosperous and land values were very high. This condition changed the next year, and it ap-

pears that the personal property, consisting of stocks, bonds, and money, was dissipated through expenditures of the wife, the executrix, without bond, of his will, and the chancellor decreed that she was indebted to the estate in the sum of about seventeen thousand dollars.

The deceased had been married about three years before his death and had adopted the two children who are beneficiaries in the will, and whose ages were thirteen and nine years, respectively; thus it appearing from the will that the testator intended that these children should receive support and education from the home plantation for many years, until they became twenty-one. The total amount of the legacies given the appellants was eighteen thousand dollars, and it appears from the evidence that the deceased could have reasonably anticipated that his personal property, consisting of money, stocks, and bonds, and other property, would be sufficient to satisfy the legacies given the appellants, who were his nephews and nieces.

After a careful consideration of the language and terms of the whole will, together with the circumstances surrounding the testator at the time of its execution, we do not think the testator intended to charge the home place in Leflore county with the legacies bequeathed the appellants. Notwithstanding the provision in the will that "it is my further will that said legacies are hereby made a charge on my estate," it seems clear to us from the whole testament that the testator did not intend that the home place given to his wife and two children, which was to serve them specifically for many years, was to be subjected to he payment of the legacies. We think, from the language used in the will, and considering it as a whole, the testator intended that the legacies should be paid out of his personal property, and that, if that were not sufficient, then the Arkansas property was to be sold and the proceeds used in fully paying the legacies.

We hardly believe it could be of any value to dissent and discuss the provisions in the different items of the will, for a careful reading of these clauses, especially items 1, 2, and 3, will, in our opinion, justify the conclusion we have reached. It is very plain the testator did not intend that his home place should be disposed of in any manner or for any purpose until the youngest child was of age; and his direction to pay the legacies out of the proceeds of the sale of the Arkansas place if the legacies had not already been paid when such sale was made, is convincing that he did not intend the home place, specifically bequeathed to his wife and children for their special use and benefit, should be charged with the legacies. A careful reading and study of the three items referred to will demonstrate, in our judgment, that the testator intended the home place in Leflore county should never be impressed with a charge against it to satisfy the legacies bequeathed the appellants.

The decree of the lower court is therefore affirmed.

*Affirmed.*